# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

IN RE:                                          CASE NO.: 8:19-bk-02680-MGW
                                                                     CHAPTER 7

Dale Ellen DeFranco

aka Dayle E DeFranco,

     Debtor.

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

---

**NOTICE OF OPPORTUNITY TO**
**OBJECT AND REQUEST FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Suite 555, Tampa, Florida 33602 and serve a copy on the movant's attorney, Attorney for Secured Creditor, at Robertson, Anschutz & Schneid, PL, 6409 Congress Ave., Suite 100, Boca Raton, FL 33487, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

    Secured Creditor, Nationstar Mortgage LLC d/b/a Mr. Cooper, by and through the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a modification of the automatic stay provisions for cause, and, in support thereof, states the following:

1. Debtor(s), Dale Ellen DeFranco aka Dayle E DeFranco, filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code on March 26, 2019.

2. Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. §
1334, 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and
statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3. Secured Creditor hereby waives the requirements of 11 U.S.C. § 362(e). The automatic
stay of any act against property of the estate under § 362(a) shall continue until this Court
orders or the stay is otherwise terminated by operation of law.

4. On September 15, 2006, Debtor(s) executed and delivered a Promissory Note ("Note")
and a Mortgage ("Mortgage") securing payment of the Note in the amount of $100,000.00
to JPMorgan Chase Bank, N.A. The Mortgage was recorded on September 25, 2006 in
Book 15384 at Page 24 of the Public Records of Pinellas County, Florida.  The loan was
transferred to Secured Creditor. True and accurate copies of documents establishing a
perfected security interest and ability to enforce the terms of the Note are attached hereto
as Composite Exhibit "A."  The documents include copies of the Note with any required
indorsements, Recorded Mortgage, Assignment(s) of Mortgage, and any other applicable
documentation supporting the right to seek a lift of the automatic stay and foreclose, if
necessary.

5. The terms and conditions of the Note and Mortgage were later modified pursuant to the
Loan Modification Agreement ("Agreement") beginning November 1, 2013. Said
Agreement created a new principal balance of $103,107.25. A true and accurate copy of
the Agreement is attached hereto as Composite Exhibit "A".

6. Attached are redacted copies of any documents that support the claim, such as promissory

notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgements, mortgages, and security agreements in support of right to see a lift of the automatic stay and foreclose if necessary.

7. The Mortgage provides Secured Creditor a lien on the real property located at 3677 45th Way N St Petersburg, Florida 33713, in Pinellas County, and legally described as stated in the mortgage attached in Composite Exhibit "A."

8. The terms of the aforementioned Note and Mortgage have been in default, and remain in default, since May 1, 2017.  As of March 27, 2019, the approximate total payoff amount was $111,415.57.

9. The appraised value of the property is $69,403.00.  See Exhibit "B" which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

10. Based upon the Debtor(s)' schedules, the property is surrendered and also claimed as exempt.  The Trustee has not abandoned the property.

11. Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest.  Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

12. If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

13. Secured Creditor respectfully requests the Court grant it relief from the Automatic Stay in

this cause pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Secured Creditor for its interest in the above stated collateral. The value of the collateral is insufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the Debtor's assets.

14. Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3).

15. Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the mortgage. Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

16. A Proposed Order accompanies this Motion. See Exhibit "C" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3), to

seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any

such further relief as this Honorable Court deems just and appropriate.

Date: April 3, 2019

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969

By: /s/ Nathalie Rodriguez_____
Nathalie Rodriguez, Esquire
Florida Bar Number: 125114
Email: nrodriguez@rasflaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 3, 2019, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via

CM/ECF or United States Mail to the following parties:

Dale Ellen DeFranco
3677 45th Way North
Saint Petersburg, FL 33713

Douglas J Burns
Douglas J Burns PA
2559 Nursery Road, #A
Clearwater, FL 33764

Douglas N Menchise
2963 Gulf to Bay Boulevard, Suite 300
Clearwater, FL 33759

United States Trustee - TPA7/13
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969

By: /s/ Nathalie Rodriguez
Nathalie Rodriguez, Esquire
Florida Bar Number: 125114
Email: nrodriguez@rasflaw.com

**COMPOSITE EXHIBIT "A"**

# NOTE

September 15, 2006       SAINT PETERSBURG       FL
[Date]                    [City]                    [State]

3677 45TH WAY N, SAINT PETERSBURG, FL 33713
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $     100,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

JPMORGAN CHASE BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on November 1, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1, 2026 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3415 VISION DRIVE
COLUMBUS, OH 43219            or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $     760.36.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

---

**FLORIDA FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-5N(FL) (0005)       **Form 3210 1/01**
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3            Initials: _dd_



**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Dale DeFranco_ 9/15/06 _____ (Seal)
DALE DEFRANCO                    -Borrower
Social Security No.: ███████

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

Pay to the Order of:
Without Recourse
JPMorgan Chase Bank, N.A.

BY: _Wanda Crockham_____
WANDA CROCKHAM/ASSISTANT SECRETARY

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

*[Sign Original Only]*

Return To:

Chicago Title ▮▮▮▮▮
ServiceLink Division
4000 Industrial Blvd          :OCESSING
Aliquippa, PA 15001

KEN BURKE, CLERK OF COURT
PINELLAS COUNTY FLORIDA
INST# 2006355188 09/25/2006 at 04:10 PM
OFF REC BK: 15384 PG: 24-43
DocType:MTG RECORDING: $171.50

M DOC STAMP: $350.00 INT TAX: $200.00

This document was prepared by:  KATRINA GASS

*JP Morgan Chase Bank*
*1111 Polaris Parkway*

―――――――――――――――[Space Above This Line For Recording Data]―――――――――

# MORTGAGE

DEC 07 2006

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated    September 15, 2006    ,
together with all Riders to this document.
(B) **"Borrower"** is  DALE DEFRANCO, UNMARRIED

Borrower is the mortgagor under this Security Instrument.
(C) **"Lender"** is    JPMORGAN CHASE BANK, N.A.

Lender is a  BANK
organized and existing under the laws of   the U.S.A.

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3010  1/01

⊛ -6(FL) (0005)
Page 1 of 16          Initials: *dd*

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **1111 POLARIS PARKWAY**
**COLUMBUS OH 43240**
Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated   **September 15, 2006**
The Note states that Borrower owes Lender
**One Hundred Thousand, and 00/100**                                              **Dollars**
(U.S. $    **100,000.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   **October 1, 2026**
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _dd_

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the  COUNTY          [Type of Recording Jurisdiction] of  PINELLAS                                                                        [Name of Recording Jurisdiction]:

See Attached Legal Description

Parcel ID Number:    103116129300040130                which currently has the address of
                     3677 45TH WAY N                                                    [Street]
                     SAINT PETERSBURG              [City], Florida    33713    [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

-6(FL) (0005)                         Page 3 of 16         Initials: _dd_          Form 3010   1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment





can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Initials:  dd

-6(FL) (0005)                    Page 7 of 16                    Form 3010   1/01

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.



Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

Initials:  dd

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

-6(FL) (0005)    Page 11 of 18    Initials:     **Form 3010  1/01**

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials:  dd

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_WITNESS WANDA A MATTHEWS_

_____ (Seal)
                          -Borrower

_____ (Address)

_WITNESS RONALD U MOBLEY_

_____ (Seal)
                          -Borrower

_____ (Address)

_Dale DeFranco_ (Seal)
DALE DEFRANCO    -Borrower

_____ (Seal)
                          -Borrower

3677 45TH WAY N
SAINT PETERSBURG, FL 33713    (Address)

_____ (Address)

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Address)

_____ (Address)

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Address)

_____ (Address)

-6(FL) (0005)              Page 15 of 16              Form 3010  1/01

**STATE OF FLORIDA,**              *Pinellas*      **County ss:**

     The foregoing instrument was acknowledged before me this    September 15, 2006    by

DALE DEFRANCO, UNMARRIED

who is personally known to me or who has produced *Driver License*      as identification.

Notary Public

Wanda A. Matthews
Commission #DD398089
Expires: Feb 20, 2009
Bonded Thru
Atlantic Bonding Co., Inc.

Initials: *dd*

-6(FL) (0005)              Page 16 of 16              Form 3010   1/01



# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this       15th       day of
September 2006                                    , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to  JPMORGAN CHASE BANK, N.A.
organized and existing under the laws of the U.S.A.

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:
3677 45TH WAY N, SAINT PETERSBURG, FL 33713

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in

(the "Declaration").  The Property is a part of a planned unit development known as

BUTTONWOOD

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.
   **PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
   **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

**MULTISTATE PUD RIDER**- Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01**



Page 1 of 3                         Initials: _dd_
VMP Mortgage Solutions, Inc. (800)521-7291

-7R (0411)

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _dd_

-7R (0411)                     Page 2 of 3                     Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_Dale De Franco_ (Seal)          _____ (Seal)
DALE DEFRANCO             -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____          _____


VMP®-7R (0411)                   Page 3 of 3                   Form 3150 1/01

**Exhibit "A"**
**Legal Description**

All that certain parcel of land situate in the County of Pinellas and the State of Florida being known and designated as follows:

Lot 13, Less the North .40 ft of the East 65.0 ft., together with the North .40 ft. of Lot 14, Block 4, Buttonwood Subdivision, according to the Plat thereof, as recorded in Plat Book 86, Page 38, of the Public Records of Pinellas County, Florida.

Tax/Parcel ID: ███████████

*dd*

**SHORT FORM RESIDENTIAL LOAN POLICY**
**ONE-TO-FOUR FAMILY (10-17-92) (FLORIDA MODIFIED)**

### Policy No. 02-111-09-1223763-01

# Chicago Title Insurance Company

OCT 0 6 2006

The Company issues this Policy in accordance with the insuring provisions set forth.

## SCHEDULE A

Amount of Insurance: $ 100,000.00

Premium: $ 275.00

File Number: 1223763-1

Mortgage Amount: $ 100,000.00

Loan Number: ▉▉▉▉

Mortgage Date: 09/15/2006

Date of Policy: 09/22/2006
(or the date of recording of the insured mortgage,
whichever is later)

Name of Insured: JP Morgan Chase Bank, N.A., its successors and/or assigns as their interest may appear

Name of Borrower(s): Dale Defranco

Property (Street ) Address *(for information only)*: 3677 45TH WAY N, SAINT PETERSBURG

County, State and Zip code: PINELLAS, FL 33713-1128

The estate or interest in the land identified in this Schedule A and which is encumbered by the insured mortgage is Fee Simple and is at Date of Policy vested in the borrower(s) shown in the insured mortgage and named above.

The land referred to in this policy is described as set forth in the insured mortgage and is identified as the property address shown above.

This policy consists of two pages, unless an addendum is attached and indicated below:

[X] Addendum attached:     [ ] No Addendum attached:

The endorsements below are incorporated herein if the appropriate box next to an endorsement is checked and for the ALTA Form5 series and/or the ALTA Form 6 series one box is checked to the applicable form. (Check all that apply)

[ ] ALTA ENDORSEMENT (Condominium) Form 4.1
[X] ALTA ENDORSEMENT (Planned Unit Development) Form 5
[ ] ALTA ENDORSEMENT (Planned Unit Development) Form 5.1
[ ] ALTA ENDORSEMENT (Variable Rate) Form 6
[ ] ALTA ENDORSEMENT (Variable Rate) Form 6.1
[ ] ALTA ENDORSEMENT (Variable Rate - Negative Amortization) Form 6.2
[ ] ALTA ENDORSEMENT 7 (Manufactured Housing)
[X] ENDORSEMENT 8.1 (Environmental Protection Lien) referring to the following state statute(s):
[X] FLORIDA ENDORSEMENT FORM 9 (3/27/92) (Restrictions, Easements, Minerals)
[ ] FLORIDA NAVIGATIONAL SERVITUDE ENDORSEMENT
[ ] FLORIDA SURVEY ENDORSEMENT
[ ] FLORIDA REVOLVING CREDIT ENDORSEMENT

*In Witness Whereof,* **CHICAGO TITLE INSURANCE COMPANY** has caused this policy to be signed and sealed as of the date of policy in Schedue A, the policy to become valid when countersigned by an authorized signatory.

CHICAGO TITLE INSURANCE COMPANY

By: _____ President

ATTEST _____ Secretary

**SUBJECT TO THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B BELOW, AND ANY ADDENDUM ATTACHED HERETO, CHICAGO TITLE INSURANCE COMPANY, A MISSOURI CORPORATION, HEREIN CALLED THE "COMPANY," HEREBY INSURES THE INSURED IN ACCORDANCE WITH AND SUBJECT TO THE TERMS EXCLUSIONS, CONDITIONS AND STIPULATIONS SET FORTH IN THE AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (10-17-92), ALL OF WHICH ARE INCORPORATD HEREIN. ALL REFERENCES TO SCHEDULES A AND B SHALL REFER TO SCHEDULES A AND B OF THIS POLICY. FOR INFORMATION OR ASSISTANCE ABOUT COVERAGE CALL 1-800-883-2020.**

## SCHEDULE B

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of the matters set forth below:

1. Those taxes and special assessments which become due and payable subsequent to Date of Policy.

2. Covenants, conditions and restrictions, if any, appearing in the public records.

3. Any easements or servitudes appearing in the public records.

4. Any lease, grant, exception or reservation of minerals or mineral rights appearing in the public records.

Countersigned

*Albert K. Saylo. III*

Authorized Signatory



File Number ██████                     Addendum To Policy Number: 02-111-09-1223763-01

## SCHEDULE B (continued)

IN ADDITION TO THE MATTERS SET FORTH ON SCHEDULE B OF THE POLICY TO WHICH THIS ADDENDUM IS ATTACHED, THIS POLICY DOES NOT INSURE AGAINST LOSS OR DAMAGE BY REASON OF, AND THE EXPRESS INSURANCE AS SET FORTH IN PARAGRAPHS 1-5 OF SCHEDULE B SHALL NOT APPLY TO, THE FOLLOWING:

1.  Easement as set forth in Plat Book 86 Page 38, in PINELLAS County Records.

2.  Any taxes or assessments, not yet due or payable.

3.  All limitations, covenants, conditions, restrictions, reservations, easements and other terms affecting Buttonwood Subdivision a planned unit development as per declaration of covenants and restrictions as set forth in PINELLAS County Records.

Recording Requested By:
**JPMORGAN CHASE BANK, N.A.**
Prepared By:
*Jampika Watson*
318-432-6114
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

Case Nbr: ▮▮▮▮▮
Ref Number: ▮▮▮▮▮
Property Address:
3677 45TH WAY N
SAINT PETERSBURG, FL 33713
FL0-AMc 31196140 E 2/20/2015



This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned (herein "Assignor") whose address is **700 KANSAS LANE, MONROE, LA 71203** does hereby grant, sell, assign, transfer and convey unto **NATIONSTAR MORTGAGE, LLC** whose address is **350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** that certain Mortgage described below and all rights accrued or to accrue under said Mortgage. To Have and to Hold, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the Mortgage.

Beneficiary:            **JPMORGAN CHASE BANK, N.A.**
Original Borrower(s):   **DALE DEFRANCO, UNMARRIED**
Date of Mortgage:       **9/15/2006**
Original Loan Amount:   **$100,000.00**

Recorded in Pinellas County, FL on: 9/25/2006, book OFF REC 15384, page 24 and instrument number 2006355188

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
*2/25/2015*
**JPMORGAN CHASE BANK, N.A.**

By: _____        By: _____
        *Jamelka Watson*                      Jeanette P. Sly
**VICE PRESIDENT**                      VICE PRESIDENT

Witness: _____      Witness: **Daisy Harris**
        *Joshua L. McCauton*

State of LA, County of **Parish of Ouachita**

On *2/25/2015*, before me, *Jamelka Watson* / *Y. K. Wilson* , VICE PRESIDENT _____, a Notary Public, personally appeared **Jeanette P. Sly** , **VICE PRESIDENT** of JPMORGAN CHASE BANK, N.A. and personally known to me, or proved to me on the basis of satisfactory evidence, to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: _____  *Y. K. Wilson*
My Commission Expires: _____ *Lifetime*

*Y.K. Wilson*
*Notary Public #064399*
*Ouachita Parish, LA*
*Lifetime Commission*

*JPMorgan Chase Bank, National Association — CORPORATE SEAL*





**Loan Number** 

# LOAN MODIFICATION AGREEMENT

Borrower ("I")[1]: **DALE  DEFRANCO**
Lender ("Lender"): **JPMORGAN CHASE BANK, N.A.**
Date of First Lien Security Instrument ("Mortgage") and Note ("Note"): **SEPTEMBER 15, 2006**
Loan Number: ▮▮▮▮▮▮▮▮ ("Loan")
Property Address: **3677 45TH WAY N, SAINT PETERSBURG, FLORIDA 33713** ("Property")

If my representations in Section 1 continue to be true in all material respects, then the provisions of Section 2 of this Loan Modification Agreement ("Agreement") will, as set forth in Section 2, amend and supplement (i) the Mortgage on the Property, and (ii) the Note secured by the Mortgage. The Mortgage and Note together, as may previously have been amended, are referred to as the 'Loan Documents." Capitalized terms used in this Agreement have the meaning given to them in the Loan Documents.

I have provided confirmation of my financial hardship and documents to permit verification of all of my income to determine whether I qualify for the offer described in this Agreement. This Agreement will not take effect unless and until the Lender signs it.

1.  **My Representations**. I represent to the Lender and agree:
    A.  I am experiencing a financial hardship and, as a result, am either in default under the Loan Documents or a default is imminent.

    B.  The Property is neither in a state of disrepair, nor condemned.

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents.

    D.  I am not a party to any litigation involving the Loan Documents, except to the extent I may be a defendant in a foreclosure action.

    E.  I have provided documentation for **all** income that I earn.

    F.  All documents and information I provide pursuant to this Agreement are true and correct.

2.  **The Modification**. The Loan Documents are hereby modified as of **NOVEMBER 01, 2013** ("Modification Effective Date"), and all unpaid late charges are waived. The Lender agrees to suspend any foreclosure activities so long as I comply with the terms of the Loan Documents, as modified by this Agreement. The Loan Documents will be modified, and the first modified payment will be due on the date set forth in this Section 2:

    A.  The Maturity Date will be: **OCTOBER 01, 2053**.

    B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) and may include amounts toward taxes, insurance,

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa, where appropriate.

**Loan Number** ▮▮▮▮▮▮▮

or other assessments. The new principal balance of my Note is **$103,107.25** ("New Principal Balance").

C. **$30,932.18** of the New Principal Balance shall be deferred ("Deferred Principal Balance"), and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance," and this amount is **$72,175.07.**

The Interest Bearing Principal Balance will re-amortize over **480** months.

Interest will begin to accrue as of **OCTOBER 01, 2013**. The first new monthly payment on the New Principal Balance will be due on **NOVEMBER 01, 2013**, and monthly on the same date thereafter.

This Section 2.C does not apply to the repayment of any Deferred Principal Balance and such a balance will be repaid in accordance with Section 2.D. My payment schedule for the modified Loan is as follows.

I promise to pay interest on the Interest Bearing Principal Balance at the rate of **4.000%** annually. I promise to make consecutive monthly payments of principal and interest in the amount of **$301.65**, which is an amount sufficient to amortize the Interest Bearing Principal Balance over a period of **480** months.

The Deferred Principal Balance of **$30,932.18** will be due on the Maturity Date unless due earlier in accordance with Section 2.D.

The above terms in this Section 2.C shall supersede any provisions to the contrary in the Loan Documents, including, but not limited to, provisions for an adjustable or step interest rate.

D. I agree to pay in full (i) the Deferred Principal Balance, if any; and (ii) any other amounts still owed under the Loan Documents, by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.E below, the date I pay the entire Interest Bearing Principal Balance, or the Maturity Date.

E. I will be in default if I do not (i) pay the full amount of a monthly payment on the date it is due, or (ii) comply with the terms of the Loan Documents, as modified by this Agreement. If a default rate of interest is permitted under the current Loan Documents, then in the event of default, the interest that will be due on the Interest Bearing Principal Balance will be the rate set forth in Section 2.C., and there will be no interest payable on the Deferred Principal Balance, if any.

F. If I make a partial prepayment of principal, the Lender may apply that partial prepayment first to any remaining Deferred Principal Balance before applying such partial prepayment to other amounts due under this Agreement or the Loan Documents.

3. **Additional Agreements.** I agree to the following:

LOAN MODIFICATION AGREEMENT -    ver. 10_03_2013_11_03_11

**Loan Number**  ███████

A. That this Agreement shall supersede the terms of any modification, forbearance, or workout plan, if any, that I previously entered into with the Lender.

B. To comply, except to the extent that they are modified by this Agreement, or by the U.S. Bankruptcy Code, with all covenants, agreements, and requirements of the Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan. This Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

C. That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms.

D. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, or by the U.S. Bankruptcy Code, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the Lender shall give me notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

G. If any document is lost, misplaced, misstated, or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender reasonably sustains as a result of my failure.

H. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

**Loan Number** ███████

I. That, if Borrower is in bankruptcy upon execution of this document, Borrower will cooperate fully with Lender in obtaining any required Bankruptcy Court and trustee approvals in accordance with local court rules and procedures. Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

J. If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

K. That in agreeing to the changes to the original Loan Documents as reflected in this Agreement, the Lender has relied upon the truth and accuracy of all of the representations made by the Borrower(s), both in this Agreement and in any documentation provided by or on behalf of the Borrower(s) in connection with this Agreement. If the Lender subsequently determines that such representations or documentation were not truthful or accurate, the Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

L. I acknowledge and agree that if the Lender executing this Agreement is not the current holder or owner of the Note and Mortgage, that such party is the authorized servicing agent for such holder or owner, or its successor in interest, and has full power and authority to bind itself and such holder and owner to the terms of this modification.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

Loan Number

**TO BE SIGNED BY BORROWER ONLY**

**BORROWER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And DALE DEFRANCO, LOAN NUMBER 1820263065 WITH A MODIFICATION EFFECTIVE DATE OF November 01, 2013

In Witness Whereof, the Borrower(s) have executed this agreement.

Date: 11, 01, 2013

Borrower - **DALE DEFRANCO**

LOAN MODIFICATION AGREEMENT -    ver 10_03_2013_11_03_11

Page 5 of 6 pages

**Loan Number** ████████

## TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And DALE  DEFRANCO, LOAN NUMBER 1820263065 WITH A MODIFICATION EFFECTIVE DATE OF November 01, 2013

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A.**

By: _____

Printed Name:    Brenda Nevarez-Quiroga
                 Vice President

Date: _____

# EXHIBIT "B"

Interactive Map of this parcel     Sales Query     Back to Query Results     New Search     Tax Collector Home Page     Contact Us

# 10-31-16-12930-004-0130

**Compact Property Record Card**

## **Updated** March 29, 2019

Tax Estimator     Email   Print     Radius Search     FEMA/WLM

| Ownership/Mailing Address Change Mailing Address | Site Address |
|---|---|
| DE FRANCO, DALE<br>3677 45TH WAY N<br>ST PETERSBURG FL 33713-1128 | 3677 45TH WAY N<br>ST PETERSBURG |

**Property Use:** 0133 (Planned Unit Development)     Total Living: SF: 1,105     Total Gross SF: 1,105

[click here to hide] **Legal Description**
BUTTONWOOD SUB BLK 4, LOT 13 LESS N .40FT OF E 65FT AND N .40FT OF LOT 14

| **Tax Estimator**    File for Homestead Exemption | | | **2019 Parcel Use** |
|---|---|---|---|
| Exemption | 2019 | 2020 | *Assuming no ownership changes before Jan. 1 |
| Homestead: | Yes | Yes | Homestead Use Percentage: 100.00% |
| Government: | No | No | Non-Homestead Use Percentage: 0.00% |
| Institutional: | No | No | Classified Agricultural: No |
| Historic: | No | No | |

### **Parcel Information**    **Latest Notice of Proposed Property Taxes (TRIM Notice)**

| Most Recent Recording | Sales Comparison | Census Tract | Evacuation Zone<br>(NOT the same as a FEMA Flood Zone) | Flood Zone<br>(NOT the same as your evacuation zone) | Plat Book/Page |
|---|---|---|---|---|---|
| 09566/0875 | $81,651 Sales Query | 121030228012 | NON EVAC | Compare Preliminary to Current FEMA Maps | 86/38 |

### **2018 Interim Value Information**

| Year | Just/Market Value | Assessed Value / SOH Cap | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|
| 2018 | $69,403 | $47,563 | $22,563 | $22,563 | $22,563 |

### [click here to hide] Value History as Certified (yellow indicates correction on file)

| Year | Homestead Exemption | Just/Market Value | Assessed Value | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|---|
| 2017 | Yes | $64,475 | $46,585 | $21,585 | $21,585 | $21,585 |
| 2016 | Yes | $53,610 | $45,627 | $20,627 | $20,627 | $20,627 |
| 2015 | Yes | $50,330 | $45,310 | $20,310 | $20,310 | $20,310 |
| 2014 | Yes | $44,950 | $44,950 | $19,950 | $19,950 | $19,950 |
| 2013 | Yes | $56,220 | $56,220 | $25,000 | $31,220 | $25,000 |
| 2012 | Yes | $58,007 | $56,747 | $25,000 | $31,747 | $25,000 |
| 2011 | Yes | $55,094 | $55,094 | $25,000 | $30,094 | $25,000 |

**EXHIBIT "C"**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

IN RE:                                                    CASE NO.: 8:19-bk-02680-MGW
                                                                              CHAPTER 7

Dale Ellen DeFranco

aka Dayle E DeFranco,

    Debtor.
_____/


## ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

THIS CASE came on consideration without a hearing on Nationstar Mortgage LLC d/b/a Mr. Cooper's ("Secured Creditor") Motion for Relief from Stay (Docket No. __).  No appropriate response has been filed in accordance with Local Rule 2002-4.  Accordingly, it is:

**ORDERED:**

1.  Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2.  The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the Secured Creditor's

1

interest in the following property located at 3677 45th Way N St Petersburg, Florida 33713 in Pinellas County, Florida, and legally described as:

**Lot 13, Less the North .40 ft of the East 65.0 ft., together with the North .40 ft of Lot 14, Block 4, Buttonwood Subdivision, according to the Plat thereof, as recorded in Plat Book 86, Page 38, of the Public Records of Pinellas County, Florida.**

3. The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured Creditor to exercise any and all *in rem* remedies against the property described above. Secured Creditor shall not seek an *in personam* judgment against Debtor(s).

4. Secured Creditor is further granted relief in order to contact the Debtor(s) by telephone or written correspondence in order to discuss the possibility of a forbearance agreement, loan modification, refinance agreement or loan workout/loss mitigation agreement.

5. The Secured Creditor's request to waive the 14-day stay period pursuant to Bankruptcy Rule 4001(a)(3) is granted.

6. Attorneys' fees in the amount of $345.00 and costs in the amount of $181.00 are awarded for the prosecution of this Motion for Relief from Stay, but are not recoverable from the Debtor(s) or the Debtor(s)' Bankruptcy estate.

###

Attorney, Nathalie Rodriguez, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.